UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:08-cr-00013-RLY-CMM |
| ) | |
| DIMITRAI CABELL, ) -10 | |
| ) | |
| Defendant. ) | |

**ORDER**

Defendant Dimitrai Cabell has filed a motion asking the court to reduce his sentence under the First Step Act of 2018. Dkt. 697. For the reasons stated below, his motion is **GRANTED IN PART** to the extent that his sentence of incarceration is reduced to 262 months.

**I.   Background**

In September 2008, Dimitrai Cabell plead guilty to conspiracy to distribute in excess of 5 kilograms or more of a substance containing a detectable amount of cocaine hydrochloride and 50 grams or more of a substance containing a detectable amount of cocaine base. Dkt. 264 at 1. In 2007, Cabell was a distributor in a cocaine trafficking organization. Dkt. 44. Mr. Cabell received cocaine base from an individual who trafficked the drugs from Kentucky to the Evansville, Indiana, area. *Id.* at 2. On May 15, 2007, law enforcement officers conducted a controlled purchase of cocaine base from Mr. Cabell in which Mr. Cabell sold five grams of cocaine base to a confidential informant. *Id.*

At the time, the statutory range of imprisonment for that amount of cocaine base was 10 years to life. 21 U.SC. § 841(b)(1)(A)(iii) (eff. July 27, 2006, to April 14, 2009). In the course of the prosecution, however, the government filed an Information under 21 U.S.C. § 851 alleging that

Mr. Cabell had a previous conviction for a drug felony, enhancing the mandatory minimum sentence to 20 years under the law as it existed at the time. *Id.*; see also dkt. 52 (§ 851 Information). The mandatory minimum term of supervised release under the law as it existed at the time was 10 years. 21 U.S.C. § 841(b)(1)(A)(iii) (eff. July 27, 2006, to April 14, 2009).

In Mr. Cabell's plea agreement, the Government agreed to not file an additional § 851 Information alleging any other prior drug felony convictions. Dkt. 43 at 2–3. This would have further enhanced Mr. Cabell's mandatory minimum sentence to life. 21 U.SC. § 841(b)(1)(A)(iii) (eff. July 27, 2006, to April 14, 2009). Mr. Cabell agreed to a sentence of 300 months in the plea agreement. *Id.* at 2. The plea agreement also included the following waiver: "[The defendant] expressly agrees not to contest his conviction or sentence or seek to modify his sentence or the manner in which it was determined in any type of proceeding, including, but not limited to, an action brought under 28 U.S.C. § 2255." *Id.* at 4. The court sentenced Mr. Cabell to 300 months of imprisonment followed by 10 years of supervised release in accordance with the plea agreement. Dkt. 264 at 2–3.

Mr. Cabell has served more than 16 years of his sentence. The Bureau of Prisons ("BOP") lists Mr. Cabell's anticipated release date (with good-conduct time included) as February 14, 2029. https://www.bop.gov/inmateloc/ (last visited March 26, 2024). He has filed a motion for sentence reduction, invoking § 404 of the First Step Act of 2018. Dkt. 697. Mr. Cabell asks the court to reduce his sentence of imprisonment to time served, a sentence below the low end of his guidelines range, and reduce his supervised release term from 10 to 8 years. Dkt. 697 at 1. The United States opposes the motion, dkt. 707, and Mr. Cabell filed a reply, dkt. 722. As discussed below, the court agrees that a sentence reduction is appropriate, but not one of such a magnitude as requested by

Mr. Cabell. Instead, the court reduces Mr. Cabell's sentence of imprisonment to 262 months and his term of supervised release term to 8 years.

## II.   Discussion

Mr. Cabell asks the Court to reduce his sentence under § 404 of the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018), which in turn incorporates portions of the Fair Sentencing Act of 2010 ("Fair Sentencing Act"), Pub. L. No. 111-220, §§ 2-3, 124 Stat. 2372, 2372 (2010).

Congress passed the Anti-Drug Abuse Act of 1986 in an effort to remedy the nationwide fear of drug abuse—in particular—cocaine base. *See generally United States v. Shull*, 793 F. Supp. 2d 1048, 1050 (S.D. Ohio 2011) (discussing the history of cocaine base sentencing and the AntiDrug Abuse Act of 1986); *United States v. Watts*, 775 F. Supp. 2d 263, 266–67 (D. Mass 2011) (same). The Anti-Drug Abuse Act created a harsh sentencing disparity between cocaine base and powder cocaine offenses. *Kimbrough v. United States*, 552 U.S. 85, 94–95 (2007); *see also Dorsey v. United States*, 567 U.S. 260, 263 (2012) (noting the act imposed upon an offender who dealt in powder cocaine the same sentence it imposed upon an offender who dealt in one one-hundredth that amount in cocaine base).

That disparity was not addressed until Congress enacted the Fair Sentencing Act in 2010. *Dorsey*, 567 U.S. at 264; *see also United States v. Dodd*, 372 F. Supp. 3d 795, 799 (S.D. Iowa 2019) (noting the Fair Sentencing Act was passed to remedy the disproportionately harsh sentences imposed for cocaine base). Among other things, the Fair Sentencing Act increased the amount of cocaine base required to trigger certain mandatory minimums. *United States v. Booker*, No. 07-CR-843-7, 2019 WL 2544247, at *1 (N.D. Ill. June 20, 2019) (citing *Dorsey*, 567 U.S. at 264). For example, when a defendant has a prior felony drug conviction, it increased the amount of

3

cocaine base required to trigger a sentence between the range of 20 years to life in prison from 50 grams to 280 grams. 21 U.S.C. § 841(b)(1)(A)(iii) (eff. Aug. 3, 2010, to Dec. 20, 2018); see also *Booker*, 2019 WL 2544247 at *1.

Signed into law on December 21, 2018, the First Step Act allows for retroactive application of the Fair Sentencing Act's reduction in the disparity between cocaine base and powder cocaine sentences. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 115th Cong. § 404 (2018). Section 404 reads as follows:

> (a) Definition of covered offense.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.
> (b) Defendants previously sentenced.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.
> (c) Limitations.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

Pub. L. No. 115-391, § 404.

In other words, § 404 of the First Step Act permits this court to impose a reduced sentence for certain offenses that were committed before August 3, 2010, in accordance with the Fair Sentencing Act, if no such reduction was previously granted. *Id.* §§ 404(b), (c). The parties agree that with one predicate prior offense under 21 U.S.C. § 841, Mr. Cabell's mandatory minimum sentence of imprisonment is lower under the Fair Sentencing Act, 10 years as opposed to the 20-year minimum he faced at the time of his sentencing. 21 U.S.C. § 841(b)(1)(B)(iii) (eff. Aug. 3,

2010, to Dec. 20, 2018). Similarly, under the Fair Sentencing Act, Mr. Cabell's mandatory minimum term of supervised release is 8 years and not the 10 years he faced at the time of his sentencing. *Id.*

When considering a motion to reduce sentence under § 404, a district court is first "faced with the question of whether the defendant is eligible for a sentence reduction. If the defendant is eligible, then the court faces the question of whether it should reduce the sentence." *United States v. Hudson*, 967 F.3d 605, 610 (7th Cir. 2020) (citing *United States v. Shaw*, 957 F.3d 734, 736 (7th Cir. 2020)).

### A. Eligibility

The United States concedes that Mr. Cabell is eligible for a sentence reduction under § 404, *see* dkt. 707 at 3–4 (acknowledging that Mr. Cabell's conviction meets the definition of a "covered offense"), and the court agrees. He committed his offenses before August 3, 2010; the penalties for his crime of conviction were reduced by the Fair Sentencing Act; his sentence was not imposed or previously reduced in accordance with the Fair Sentencing Act; and he has not previously had a § 404 motion denied after a full review of the merits. Thus, the court moves to considering whether Mr. Mitchell's sentence should be reduced and, if so, by how much.

### B. Reduction of Sentence

Mr. Cabell asks for his sentenced to be reduced to time served. Dkt. 697. The parties agree that his current guidelines range is 262 to 327 months. Dkts. 697 at 7; 707 at 4.[1] The Government

---

[1] They also agree that, if he were sentenced under today's version of § 841, his prior felonies would not qualify him for an enhanced sentence. Assuming that to be true, if Mr. Cabell were sentenced today, he would face a mandatory term of imprisonment of 5-to-40 years and a mandatory minimum term of 4 years of supervised release. 21 U.S.C. § 841(b)(1)(B)(iii) (eff. Dec. 2, 2022). Those updated provisions of § 841 are not, however, retroactive, and § 404 limits the Court to reducing Mr. Cabell's sentence as if the Fair Sentencing Act had been in place when he was originally sentenced, meaning that the court cannot reduce his sentence below the 10-year mandatory minimum term of imprisonment and 8-year mandatory term of imprisonment discussed above.

5

argues that Mr. Cabell should not receive a sentence reduction for two reasons: (1) his plea agreement expressly waived any challenges to his sentence "in any type of proceeding" which the Government contends includes a § 404 motion; and (2) he should not be granted a sentence reduction because of his serious offense, his serious criminal history, and his conduct while incarcerated. Dkt. 707 at 1.

### 1. Waiver

With regard to the Government's waiver argument, the court finds that the waiver provision in Mr. Cabell's plea does not bar his § 404 motion. "It is well-settled that appellate waivers in plea agreements are generally enforceable." *United States v. Chapa*, 602 F.3d 865, 868 (7th Cir. 2010). In *United States v. Bridgewater*, the Seventh Circuit dismissed an appeal by a defendant who was seeking compassionate release because he waived his right to make such a motion his plea agreement. 995 F.3d 591, 595 (7th Cir. 2021). The court stated that "Bridgewater's waiver, barring him from 'seek[ing] modification of . . . any aspect of [his] . . . sentence,' applies to his right to seek compassionate release under 18 U.S.C. § 3582(c)(1)(A)," noting that the defendant signed his plea agreement waiver after enactment of the First Step Act, at which point the mechanism for filing a motion for compassionate release was "known and available" when he agreed not to use it. *Id.* However, courts have enforced this provision only where the waiver was knowing and voluntary. In *United States v. Bullock*, the court declined to enforce a similar waiver against a compassionate release motion where the defendant entered the plea agreement prior to the enactment of the First Step Act. No. 1:17-cr-00221-SEB-TAB, 2020 WL 5810017, at *2 (S.D. Ind. Sept. 29, 2020). The court noted that "[b]ecause Defendant did not have the right to petition for a sentence reduction based on 'extraordinary and compelling reasons' under § 3582 at the time he pled guilty, he could not have knowingly waived the right to do so at the time he entered his plea."

6

*Id.* (citing *United States v. Olano*, 507 U.S. 725, 7333 (1993) ("Waiver is the intentional relinquishment or abandonment of a known right." (cleaned up)).

Here, Mr. Cabell did not knowingly waive his right to move for relief under § 404 of the First Step Act. Mr. Cabell pled guilty in 2008. Dkt. 264. Unlike the defendant in *Bridgewater*, Mr. Cabell pled guilty prior to the enactment of the statutes permitting his motion, the Fair Sentencing Act in 2010 and the First Step Act in 2018. He could not have knowingly waived his right to petition the court through the § 404 procedural vehicle when such a vehicle did not exist at the time of his plea agreement. *United States v. Sutton*, 962 F.3d 979, 984 (7th Cir. 2020) (holding that the First Step Act is its own procedural vehicle). The Government has not cited any case holding that a defendant was barred by a plea agreement waiver from pursuing relief under § 404 or any other provision of the First Step Act where the defendant entered the plea agreement prior to enactment of the First Step Act. Accordingly, the Government's argument that Mr. Cabell waived his ability to file the instant motion fails, and the court will reach the question of whether Mr. Cabell is entitled to a sentence reduction under the sentencing factors in 18 U.S.C. § 3553(a).

  2. **Section 3553 Factors**

In determining whether to exercise discretion to grant a sentence reduction under § 404, courts may consider the sentencing factors in 18 U.S.C. § 3553(a). *Shaw*, 957 F.3d at 741. The factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of

sentences available; (4) the kinds of sentence and the sentencing range established for the defendant's crimes; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

In addition, § 404 allows district courts "to consider intervening changes of law or fact in exercising their discretion to reduce a sentence." *Concepcion v. United States*, 597 U.S. 481, 500, (2022); see also *Hudson*, 967 F.3d at 613 (in determining whether the sentence imposed is "sufficient, but not greater than necessary," under 18 U.S.C. § 3553(a), a court may consider "updated statutory benchmarks, current Guidelines, and post-sentencing conduct when determining whether a reduced sentence is merited"). Section 404 "does not require a district court to accept a movant's argument that evidence of rehabilitation or other changes in law counsel in favor of a sentence reduction," but it must consider such arguments when they are raised. *Concepcion*, 597 U.S. at 502.[2]

Weighing in Mr. Cabell's favor, as explained, if the Fair Sentencing Act had been in effect when he was originally sentenced, the mandatory minimum sentence would have been only 10 years. In addition, according to his briefing based on counsel's interviews with several of Mr. Cabell's family members, Mr. Cabell endured an abusive and traumatic childhood. *See* dkt. 697 at

---

[2] As to the point about updated statutory benchmarks, the parties agree that, if Mr. Cabell were sentenced under today's version of § 841, his prior felonies would not qualify him for an enhanced sentence. Assuming that to be true, if Mr. Cabell were sentenced today, he would face a mandatory term of imprisonment of 5-to-40 years and a mandatory minimum term of 4 years of supervised release. 21 U.S.C. § 841(b)(1)(B)(iii) (eff. Dec. 2, 2022). Those updated provisions of § 841 are not, however, retroactive, *see United States v. Jackson*, 940 F.3d 347, 353 (7th Cir. 2019), and § 404 limits the Court to reducing Mr. Cabell's sentence as if the Fair Sentencing Act had been in place when he was originally sentenced, Pub. L. No. 115-391, § 404(b). So, while the court acknowledges those updated statutory benchmarks, it cannot reduce his sentence below the 10-year mandatory minimum term of imprisonment and 8-year mandatory term of imprisonment discussed above, nor does Mr. Cabell ask the court to do so.

10. Though Mr. Cabell does not provide substantial evidence of these claims and the information provided is not reflected in the PSR, the court has no reason to doubt counsel's representations about the content of the interviewee's statements. The court has considered this information with the appropriate weight given the lack of substantial evidence and lack of supporting information in the PSR. Mr. Cabell claims that the PSR does not contain this information because he did not want to provide that information to the PSR writer at the time and is just now comfortable coming forward with it. Dkt. 722 at 8–10. As to his conduct while incarcerated, he has engaged in numerous educational courses in the BOP including drug education. Dkt. 697-1 at 2–3. He has engaged in HVAC training in an effort to be ready for employment upon release. Dkt. 697-2. His BOP disciplinary history contains only two, non-violent, infractions during the course of his more than 16 years of incarceration. Dkt. 707-2 at 1. He would have the support of and residence with family members if he were released, dkt. 697-4 at 3–10, and he attached a letter supporting his release from a BOP staff member, *id.* at 2. Finally, he has been in BOP custody for over 15 years, and his criminal behavior is nearly two decades behind him now.

      Weighing against Mr. Cabell's request for an outright release, his current guidelines range is 262 to 327 months, and he has not yet served an amount of time equivalent to the low end of that range. In addition, his offense and his criminal history involved concerning levels of violence. The Governments states without contradiction that he has shot multiple people and, at one point, pointed a gun at a baby. The Government also claims and the defendant does not dispute that he was on parole at the time of this offense. Finally, the BOP lists his anticipated release date as February 14, 2029, so releasing him now would amount to a substantial reduction.

      The Government also argues that Mr. Cabell's "sexual proclivities" weigh against him. Dkt. 707 at 15. This argument is based on documents showing that, on two occasions, Mr. Cabell was

sent materials through the mail depicting sexualized stories involving incest and minors. Dkt. 707 at 15 (referring to dkts. 708, 709). When prison officials investigated, Mr. Cabell denied knowing the content of the materials that had been sent to him and instead said that he had ordered a "grab bag" of materials. He asked the prison to return the materials to the publisher and tell them that he did not want similar materials. Prison officials encouraged him to contact the publisher himself. Later, he received an order form for more sexually explicit materials. He reported that he had once ordered from the company that sent the form but had stopped and that he had not requested the form. Again, Mr. Cabell was urged to contact the publisher to discontinue services. Instead, he shredded the order form. The Government contends that Mr. Cabell is not "fully rehabilitated" because, if he was, he would have contacted the publisher to affirmatively ask that no more such materials be sent. Dkt. 797 at 16.

     While perhaps it would have been better for Mr. Cabell to contact the publisher, the court does not find that this series of events constitutes a reason to deny him a sentence reduction altogether. Mr. Cabell is not a sex offender, and the Government's own documents show that he was not disciplined for these events and that prison mental health staff found that no follow-up was warranted. Dkts. 708, 709. That is, the Government has not presented any evidence that Mr. Cabell was affirmatively seeking out these types of materials or actually has any deviant "sexual proclivities" that would present a danger to others.

     In sum, the court finds that § 3553 factors weigh in favor of a sentence reduction, though not to the extent requested by Mr. Cabell. Mr. Cabell's offense conduct and criminal history are too concerning for immediate release to be warranted. However, a reduction to the low end of his current guidelines range is appropriate given the facts of Mr. Cabell's childhood not known to the court at the time of his original sentencing, his efforts at rehabilitation while incarcerated, and his

almost clear conduct record over the course of more than 16 years of incarceration. This is especially true given that, under the terms of the Fair Sentencing Act, his mandatory minimum terms of imprisonment and supervised release have been substantially reduced. Even considering that the 300-month sentence was agreed to in the plea agreement, these changes in the law weigh strongly towards a sentence reduction. Accordingly, after considering the parties' evidence and arguments, as well as the § 3553 factors, the Court determines that reducing Mr. Cabell's sentence of imprisonment to 262 months and his term of supervised release to 8 years results in a sentence that is sufficient, but not greater than necessary, under § 3553.

### III. Conclusion

For the reasons stated above, Mr. Cabell's motion for sentence reduction, dkts. [697], is **granted** to the extent that the Court reduces his sentence to 262 months of imprisonment and 8 years of supervised release under § 404 of the First Step Act but **denied** to the extent that he seeks an even lower sentence under § 404. The terms of his supervised release remain the same as those stated in the Judgment docketed on September 22, 2008. Dkt. 264.

Within **3 business days of the date of this Order, counsel for the United States is ordered** to do the following: (1) transmit this order to Mr. Cabell's custodian; and (2) file a notice with the Court confirming that transmission of this order has occurred.

**IT IS SO ORDERED.**

Date: 4/01/2024

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

Dimitrai Cabell
Register Number: 08694-028
USP MARION
U.S. Penitentiary
P.O. Box 1000
Marion, IL  62959